UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANGEL AVILES,<br><br>       Petitioner,<br><br>       v.<br><br>THOMAS DICKHAUT,<br><br>       Respondent. | Civil Action No.<br>12-cv-40017-FDS |

MEMORANDUM AND ORDER
ON RESPONDENT'S MOTION TO DISMISS

**SAYLOR, J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody. Petitioner Angel Aviles was convicted of rape of a child and indecent assault and battery on a child under the age of 14. Both the Massachusetts Appeals Court and the Massachusetts Supreme Judicial Court affirmed the convictions. Aviles is currently serving a term of imprisonment of twelve to fifteen years at the Massachusetts Correctional Institute-Cedar Junction. He now seeks habeas relief pursuant to 28 U.S.C. § 2254.

Respondent Thomas Dickhaut has moved to dismiss the petition, contending that Aviles failed to exhaust his available state remedies as to the Sixth Amendment claims contained in the petition. For the reasons set forth below, Aviles will be allowed to elect whether to dismiss the unexhausted claims without prejudice and proceed on the merits of the exhausted claims, or to accept dismissal of the entire petition.

I.      **Factual Background**

   A.      **State Court Proceedings**

On May 14, 2007, Angel Aviles was convicted after a jury trial of rape of a child and indecent assault and battery on a child under the age of 14. The facts surrounding the crime that led to his conviction are set out in the decision of the SJC. *See Commonwealth v. Aviles*, 461 Mass. 60 (2011). Only the facts that are relevant to this opinion bear repetition.

In 2002, the victim, eight-year-old Marie, her mother, and her younger sister moved into Aviles's apartment.[1] In lieu of rent, Marie's mother provided health care to Aviles's ill mother, who also lived with them. The apartment had two bedrooms, a living room, a bathroom, and a kitchen. Aviles's mother slept in one bedroom, while Aviles, Marie's mother, Marie, and Marie's sister slept in the other. Marie and her sister slept on an air mattress, while Aviles and Marie's mother slept in a bed together.

On four or five occasions over a period of several months, Aviles climbed onto the air mattress, pinned Marie down with his legs, and touched Marie's buttocks over her clothing. On at least one occasion he touched the clothing covering her vagina.

One night, Marie awoke to Aviles attempting to remove her jeans. Marie ran into the nearby bathroom and attempted to lock the door. Aviles followed her into the bathroom and anally penetrated her. Afterwards, Aviles threatened Marie that if she told her mother he would harm her mother. When Marie returned to the bedroom, her mother asked her what was wrong, and Marie answered "nothing."

A few days after the incident, Marie began crying when her mother told her it was time to

---

[1] This Court uses the same pseudonym used by the Massachusetts Appeals Court and the SJC.

go to bed. She revealed, for the first time, that Aviles had "touched" her, but did not disclose the rape. Both Marie's mother, and Aviles's mother, who had overheard the conversation, immediately confronted Aviles. Aviles denied touching Marie. Marie and her family soon moved out of Aviles's apartment and returned to her maternal grandmother's home, where they had been staying prior to moving in with Aviles.

Much later, in 2005, Marie saw Aviles's photograph on television.[2] After seeing him, Marie told her grandmother that Aviles had raped her in the bathroom of his apartment. After Marie's grandmother informed Marie's mother of that conversation, they went to the police. Aviles was then arrested and indicted.

At the trial, the Commonwealth called only Marie and her mother. Marie testified that Aviles had touched her several times on the air mattress, described the bathroom rape, and revealed that she had disclosed the rape to her grandmother after seeing Aviles's face on television. She did not provide any details about the content of the conversation with her grandmother. Marie's mother testified that Marie had informed her she had been touched, but did not provide further detail. Marie's mother also testified that she went to the police because she had learned additional information.

Aviles did not take the stand. Instead, his strategy was to draw out inconsistencies from Marie's earlier statements. Aviles called a court reporter from the grand jury testimony who testified that Marie stated at one point that Aviles did not touch her buttocks over her pants. The Commonwealth, under the doctrine of verbal completeness, cross-examined the court reporter to put additional testimony into the record that Aviles had touched Marie's vaginal area.

---

[2] Aviles appeared on television because he was a registered sex offender; he had previously been convicted of indecent assault and battery on a child. The jury did not hear why the photograph was on television.

The jury found Aviles guilty of both rape of a child and indecent assault and battery on a child under the age of 14. Aviles filed a direct appeal with the Massachusetts Appeals Court, which affirmed the convictions. *See Commonwealth v. Aviles*, 77 Mass. App. Ct. 389 (2010). He then filed an Application for Leave to Obtain Further Appellate Review (ALOFAR), which the SJC granted. In his ALOFAR, Aviles challenged (1) the admission of testimony concerning an alleged "second complaint" made by the victim under the first complaint doctrine,[3] (2) the admission of the second complaint on any other evidentiary basis, and (3) whether the objection to its admission was properly preserved for review by defense counsel at trial. (S.A., Vol. I, No. 9 at 16). He subsequently filed a supplemental brief to buttress his ALOFAR, in which he contended that the first complaint doctrine should be abolished and the admissibility of such complaints should be governed by the ordinary rules of evidence. (S.A., Vol. I., No. 12 at 1).

On December 6, 2011, the SJC affirmed the conviction. The SJC found that although the testimony regarding Marie's conversation with her grandmother was not admissible as first complaint evidence, it was harmless error because the testimony was admissible to rebut the defense's accusation of fabrication. *Aviles*, 461 Mass. at 46-47.

---

[3] The Massachusetts "first complaint" doctrine limits the testimony of "complaint witnesses"

> to that of one witness who, where feasible, will be the first person told of the sexual assault. Such witness may testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint as part of the prosecution's case-in-chief. Where a first complaint witness testifies at trial regarding the complaint, the complainant also may testify about the details of the first complaint and the reasons why it was made at that particular time. What the complainant may not do, however, is testify to the fact that she "told" others, apart from the first complaint witness, about the sexual assault, even where the details of the conversation have been omitted.

*Aviles*, 461 Mass. at 67-68 (internal citations and quotation marks omitted)

**B.     Federal Proceedings**

On February 8, 2012, Aviles, proceeding *pro se*, filed a petition with this Court for habeas corpus relief. The petition challenged the necessity and application of the first complaint doctrine. Aviles filed a motion to stay in which he also included an additional claim that his constitutional rights were infringed because of ineffective assistance of counsel. He alleged that he was filing a new post-conviction motion in the state court, asserting his ineffective assistance of counsel claim, his alleged lack of a public trial, and an assortment of other challenges. On May 3, 2012, this Court ordered Aviles to state the status of his unexhausted claims pending in state court and to show good cause for his failure to exhaust those claims. (Docket No. 14). On June 22, 2012, this Court determined that Aviles had not met his good cause burden, and denied his motion to stay because his Sixth Amendment ineffective assistance of counsel challenge remained unexhausted. (Docket No. 16). The Court allowed Aviles to elect whether to dismiss his petition entirely, or to dismiss the unexhausted claims and proceed with his exhausted constitutional challenges. Aviles moved to dismiss his unexhausted claims, which the Court granted. (Docket No. 19, 22).

On September 20, 2012, Aviles filed a new memorandum in support of his petition for habeas relief. In this new memorandum, as best as the Court can decipher, Aviles reiterates his first complaint argument, but also brings forth additional arguments that he was denied his Sixth Amendment rights to a public trial and effective assistance of counsel.[4] On October 3, 2012,

---

[4] Although not raised by respondent, the Court notes that even if the Court were to construe Aviles's second memorandum as a petition, it would not be a "second or successive petition" under 28 U.S.C. § 2244(b) because the initial petition was not adjudicated on the merits. *See Slack v. McDaniel*, 529 U.S. 473, 486 (2000). Instead, federal courts should treat the initial mixed petition "as though it had not been filed, subject to whatever conditions the court attaches to the dismissal." *Id*. at 487-88.

respondent opposed the most recent petition, contending first that the newly raised claims were unexhausted, and, in any event, that the admission of the second complaint evidence did not have a harmful and injurious effect.

## II.     Analysis

### A.     Exhaustion of Claims

A federal court may not consider a petition for a writ of habeas corpus filed by a person in state custody unless the petitioner has exhausted his state court remedies with respect to all claims raised in his application.  *See* 28 U.S.C. § 2254(b)(1); *see also Rose v. Lundy*, 455 U.S. 509, 518 (1982).  It is the petitioner's burden to demonstrate exhaustion as to all claims.  *Barresi v. Maloney*, 296 F.3d 48, 51 (1st Cir. 2002).  In order to satisfy the exhaustion requirement, a petitioner must establish that both the factual and legal bases of his federal claim were "fairly and recognizably presented to the state courts."  *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).   "The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined."  *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988).  Although a petitioner need not present his federal claims in precisely the same manner in both state and federal court, the claims raised by the habeas petitioner must be the "substantial equivalent" to those raised before the state's highest court. *Barresi*, 296 F. 3d at 52 (citing *Picard*, 404 U.S. 270 at 277-78).  In petitions arising from Massachusetts state-court decisions, a petitioner must raise an appealed issue to the Supreme Judicial Court within "the four corners of the ALOFAR" in order for the issue to be "fairly presented" for exhaustion purposes.  *Mele v. Fitchburg*, 850 F.2d 817, 820 (1st Cir. 1988).

As a threshold issue, the Court treats petitioner's second memorandum of law as an

amended petition and will include his newly asserted claims in this analysis. *See Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1990) ("[P]*ro se* pleadings are to be liberally construed, in favor of the *pro se* party. . . ."). Nonetheless, the amended petition suffers from substantially the same flaw as the original petition.

Like the original petition, the amended petition asserts claims that have not been exhausted. 28 U.S.C. § 2254(b)(1). In his ALOFAR, petitioner raised three evidentiary issues related to the admission of the so-called "second complaint" made by the victim to her grandmother: (1) whether the second complaint evidence was admissible under the first complaint doctrine; (2) whether the second complaint evidence was admissible on any other evidentiary basis; and (3) whether the objection to the second complaint admission was properly preserved for review by trial counsel. In his supplemental briefing, petitioner contended that the first complaint doctrine should be abolished and such evidence should be governed by the ordinary rules of evidence. In neither his ALOFAR nor his supplemental briefing did petitioner raise a Sixth Amendment claim based on his right to a public trial or his right to effective assistance of counsel.

In his amended habeas corpus petition, petitioner again raises his first complaint claims addressed by the SJC, but also asserts claims that he was denied his Sixth Amendment rights to a public trial and to effective assistance of counsel.[5] Because he has not presented either of his Sixth Amendment claims at the state level, both of those claims are unexhausted.

---

[5] Petitioner seemingly acknowledges that he did not exhaust his respective Sixth Amendment challenges in his amended petition, because he includes them under the subheading "Issues Being Raised Via Motion for New Trial (Superior Court)." (Pet'r. Mem. at 6).

### B.     Requirements for Mixed Petitions

Respondent has moved to dismiss the petition for failure to exhaust state court remedies, as well as on substantive grounds as to the exhausted claims.  Generally, if a petitioner files a "mixed petition" that includes both exhausted and unexhausted claims, a federal court may (1) dismiss the petition in its entirety, (2) allow the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, or (3) stay the petition until the petitioner returns to state court to exhaust his previously unexhausted claims.  *Rhines v. Weber*, 544 U.S. 269, 265-66 (2005); *see also Rose*, 455 U.S. at 515, 520; *Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir. 2004).[6]  A court may exercise this third option to stay resolution of the exhausted claims and hold the petition in abeyance only "in limited circumstances."  *Rhines*, 544 U.S. at 278.  Specifically, a court may do so only if the petitioner "had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.*; *see also Clements v. Maloney*, 485 F.3d 158, 169 (1st Cir. 2007).  Neither ineffective assistance of appellate counsel, nor a litigant's *pro se* status, will support a finding of good cause in the habeas context.  *Sullivan v. Saba*, 840 F. Supp. 2d 429, 437 (D. Mass. 2012).  "[L]ack of good cause means that . . . [a petitioner] cannot take advantage of 'stay and abeyance' procedure" under *Rhines*.  *Clements*, 485 F.3d at 171.

Here, the petition is not eligible for a stay because petitioner has not demonstrated good

---

[6] Petitioner should be aware that the filing of his federal habeas corpus petition did not toll any applicable limitations periods under Massachusetts law, and, therefore, he may now be barred from raising the unexhausted claims in state court because the appeals deadlines may have passed.

Petitioner should also be aware that the filing of his federal habeas corpus petition did not toll the running of the one-year limitations period contained in 28 U.S.C. § 2244(d).  *See Neverson*, 366 F.3d at 38.  Accordingly, any successive petition that he attempts to file in this Court (for example, after attempting to exhaust his state remedies) may be barred as untimely.

cause for his failure to exhaust. *Rhines*, 544 U.S. at 265-66; *id*. at 169. For this reason, the Court will decline to stay the petition.

Instead, petitioner may elect to dismiss his unexhausted Sixth Amendment claims concerning a public trial and ineffective assistance of counsel and proceed with the exhausted claims related to the admission of second complaint evidence, or accept dismissal of the entire petition. Respondent's motion to dismiss the petition will be granted unless, within 30 days of the date of this order, petitioner files a request to dismiss the unexhausted claims and proceed on the merits of the exhausted claims. The Court further advises petitioner that should he elect to proceed he is ordered to bring only exhausted claims upon his return to federal court. Failure to comply with this order is grounds for dismissal with prejudice. *See Slack*, 529 U.S. at 489.

**III.    Conclusion**

For the foregoing reasons, respondent's motion to dismiss the petition will be granted unless, within 30 days of the date of this order, petitioner files a request to dismiss the unexhausted claims in his petition and proceed on the merits of the exhausted claims.
**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 10, 2013